IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

CALVIN R. SILVA,                    )
                                    )
            Petitioner,             )              4:04CV3292
                                    )
                                    )
      vs.                           )        MEMORANDUM AND ORDER
                                    )
ROBERT HOUSTON,                     )
                                    )
            Respondent.             )


      This matter is before the court on Calvin Silva's amended petition for a writ of habeas

corpus under 28 U.S.C. § 2254, Filing No. 53.  Briefing on the merits has been completed

and the action has been submitted on the record.  The facts are set forth in this court's

previous orders.  Filing Nos. 46 & 55.  Neither party challenges the factual findings made

in the court's earlier orders.  No additional evidence has been presented to the court.  The

court's earlier findings are expressly incorporated by reference herein.

      **I.    Facts**

            **A.    Silva's Conviction and Sentence**

      To summarize the pertinent facts, the record shows that Silva was charged in 1995

with attempted first-degree murder, use of a firearm to commit a felony, felon in possession

of a firearm, and violation of a protection order in Adams County, Nebraska District Court

(hereinafter, "the state trial court").  *See State v. Silva,* 584 N.W.2d 665, 666 (Neb. App.

1998).  He was also charged in federal court with one count of being a felon in possession

of a firearm in connection with the same incident.  *United States v. Silva,* Case No.

4:95CR3006 (D. Neb.), Filing No. 11, Indictment.

Silva was sentenced to seventy-one months on the federal charge and later, pursuant to a plea agreement, he entered a no-contest plea in state court to amended charges of attempt to commit second-degree murder and use of a firearm to commit a felony. *Silva,* 584 N.W.2d at 666. In state court, he was sentenced to a prison term of eight to fifteen years for attempted second-degree murder, and two to five years for use of a firearm. *Id.* The state sentences were to be served consecutively to each other, but concurrently with Silva's federal sentence. *Id.* at 667. Silva has been incarcerated in federal or state correctional facilities since his arrest on September 17, 1994.

### B.    The State's Appeal

Silva did not appeal his state or federal convictions or sentences. The State, however, appealed Silva's state court sentence under Neb. Rev. Stat. § 29-2320, which provides that "the prosecuting attorney . . . may appeal the sentence imposed if such attorney reasonably believes that the sentence is excessively lenient." Neb. Rev. Stat. § 29-2320. Silva, who was then incarcerated in federal prison on the federal charge, did not receive notice of the appeal. Filing No. 41, Affidavit of Calvin Silva ("Silva Aff.") at 3; Filing No. 21, Part 3 at 18, Adams County District Court, Case No. CR 94520, CR 97-9000080, transcript of hearing dated October 9, 2001 ("Postconv. H'rg Tr.") at 58.[1] The record shows that Silva's trial counsel, Arthur Langvardt, had moved to withdraw, but there was never a ruling on the motion. *Id.*, Part 2 at 7-8, Postconv. Hr'g Tr. at 5; Part 3 at 33, Postconv. Hr'g

---

[1] Citations to the record are to the court's Case Management/Electronic Case Filing ("CM/ECF") system, as accessed through the link located at the filing number, and to the numbered "parts" within that link and to page numbers of the PDF document. For example, Filing No. 2, Part 3 at 4. If the document is otherwise identified, and its pages are numbered differently, an additional citation to the document and page will be provided. The filing number and part number are identified on the system-generated header of the document in the following format:  "Document #: [filing no.] - [part no.]" (e.g., "Document #: 21-4").

Tr. at 73; Part 4 at 27, Postconv. Hr'g Exhibit ("Ex.") 5; Part 9, Adams County District Court Order dated February 2, 2002 ("Postconv. Order") at 2-3. The motion for leave to withdraw did not indicate that it had been mailed to the defendant. *Id.,* Part 9, Postconv. Order at 4. The State, however, later acknowledged in an affidavit submitted to the Nebraska Court of Appeals that "[o]n May 1, 1997, your affiant was noticed that Arthur R. Langvardt had withdrawn as attorney for [Silva]." *See* Filing No. 44, Part 8 at 3, Affidavit of Donna Fegler Daiss dated September 12, 1997, at 1. Notwithstanding the fact that it knew that Arthur Langvardt no longer represented Silva, the State thereafter served a copy of its appellate brief on Langvardt. Filing No. 44, Part 7, State's appellate brief at 19 (certificate of service dated September 22, 1997). The State also mailed a copy of its appellate brief to Silva at the federal correctional facility in Leavenworth, Kansas. *Id.* Unfortunately, Silva had been transferred to the federal correctional facility at Littleton, Colorado, approximately two years earlier (a month after he was sentenced in federal court on August 2, 1995). *See* Filing No. 21, Part 3 at 26-27, Postconv. Hr'g Tr. at 66-67. The State's trial counsel testified that she later mailed copies of the appellate brief to Silva in Littleton, Colorado. *Id.,* Part 2 at 20-21, Postconv. Hr'g Tr. at 17-18. Silva testified that he never received the copies. *Id.,* Part 3 at 19, 27-28, Postconv. Hr'g Tr. at 59, 66-67; *see also* Filing No. 44, Part 4 (correspondence showing Silva's attempts to obtain appellate documents).

No appearance by counsel was filed on Silva's behalf in the appeal. Filing No. 44, Part 2 at 3, State's postconviction brief at 1; Part 5 at 13, Nebraska Court of Appeals Case No. A-97-534, Case Action Summary at 1. The Nebraska Court of Appeals nevertheless ruled on the State's appeal and found that Silva's sentence was excessively lenient. *Silva,*

3

584 N.W.2d at 670.  The Appeals Court imposed a sentence of twenty to forty years on the

attempted second-degree murder count and five to ten years on the firearm count, to be

served <u>consecutively</u> to each other and <u>consecutively</u> to the federal sentence.  *Id.* (this

effectively tripled Silva's sentence).[2]  Silva became aware of the Court of Appeals' action

only after his sister read it in the newspaper.  Filing No. 21, Part 3 at 19, Postconv. Hr'g Tr.

at 59.  He then moved to vacate the Appeals Court's order in both the Court of Appeals and

the Nebraska Supreme Court, but the motions were denied as untimely.  *See* Filing No. 44,

Part 5, Motion at 1; Filing No. 21, Part 13, Case No. A 97 534, Docket Sheet at 2.

### C.    Adams County Postconviction Action

Silva then filed a postconviction action in state court.  Filing No. 21, Part 5, Motion

to Vacate at 1-5.  He challenged the Court of Appeals' increased sentence on the ground

that he had no notice of the proceeding and no counsel on appeal, in violation of his Fifth

and Sixth Amendment rights.  *Id.* at 3.  He also alleged a due process violation in the State's

alleged breach of the plea agreement.[3]  *Id.*  The Adams County Public defender, Arthur C.

Toogood, was appointed to represent Silva in the action.  At the hearing, Silva's trial

counsel, Arthur Langvardt, testified that he had received copies of appellate filings and

forwarded them to Silva's sister.  Filing No. 21, Part 2 at 38-39, Postconv. Hr'g Tr. at 35-36.

He also testified, "I assumed I was showing up in the record somewhere because I never

---

[2]Under Nebraska law, a defendant is eligible for parole after serving half of the low end of the sentencing range.  Accordingly, it was likely that Silva would actually serve ten years under his original sentence.  Silva would be expected to serve twenty-five years on the Appeals Court's sentence, after the five years he would be expected to serve on his federal sentence.

[3]Because of the alleged breach of the plea agreement, the County Attorney who had represented the State at trial and in the State's appeal, Donna Fegler Daiss, had a conflict of interest and could not represent the State in the postconviction action.

did anything in the Court of Appeals, either."  Filing No. 21, Part 3 at 2, Postconv. Hr'g Tr. at 42.

The State conceded that Silva's Sixth Amendment right to counsel on appeal had been violated.  Filing No. 44, Part 2 at 3, State's postconviction brief ("State's Postconv. Br.") at 1-2.  In its brief, the State asserted that "Silva has presented evidence that he had no representation by counsel on the State's appeal of his sentence, and the State concedes that this is true.  The actual or constructive denial of counsel on appeal is legally presumed to result in prejudice to the defendant."  *Id.,* Part 2 at 16, State's Postconv. Br. at 14.

At the postconviction hearing, the Special Prosecutor for the State, attorney Robert J. Parker, acknowledged that "[Silva] didn't have counsel on appeal, we can't deny that . . . ."  Filing No. 21, Part 3 at 33, Postconv. Hr'g Tr. at 73.  Parker also stated, "[t]he problem we've got in my opinion is the appeal . . . the effectiveness of counsel on appeal, we can't bury our heads in the sand here . . . [noting that the petitioner's attorney was] probably still counsel of record [for the petitioner during the State's appeal]."  *Id.,* Part 3 at 32-33, Postconv. Hr'g Tr. at 72-73.  Further, he stated, "I won't deny the fact that he [petitioner's attorney] did absolutely nothing for Mr. Silva on this appeal.  And I think there may be some problems with ineffective assistance of counsel on the appeal."  *Id.*

The State argued that the remedy for the violation was that "the appeal should be reheard by the Court of Appeals."  Filing No. 21, Part 3 at 34, Postconv. Hr'g Tr. at 74.  Commenting to the State that "you sound somewhat like you've given up the ship as to ineffective assistance of counsel," the court requested briefing on the issue of remedy.  *Id.*, Part 3 at 35, Postconv. Hr'g Tr. at 75.  In its brief, the State explicitly recognized that

because of the posture of the case, it was the State, and not the defendant, who was to be granted the remedy of the "new" appeal:

> The State concedes, however, that Silva was denied the assistance of counsel on the State's appeal.  Under Nebraska law, the appropriate remedy to Silva is <u>to require the State to file a new appeal</u> so that Silva may be represented by counsel.  Because the State concedes that a new appeal must be filed, Silva's second allegation, that he received no notice of the State's first appeal, is rendered moot and will not be addressed.

Filing No. 44, Part 2 at 3-4, State's Postconv. Br. at 1-2 (emphasis added).[4]  The State cited *State v. McCracken,* 615 N.W.2d 882 (Neb. 2000), and *State v. Trotter,* 609 N.W.2d 33 (Neb. 2000), in support of its position that the proper procedure was for the trial court to grant a new appeal, and argued that "although *Trotter* and *McCracken* involved appeals filed by the defendant, the same reasoning should apply in a case in which the defendant was denied counsel in an appeal filed by the State."  *Id.*, Part 2 at 17, Postconv. Br. at 15.

The court found Silva had been denied his right to counsel in the State's appeal and held that Silva was "entitled to have a new direct appeal due to the infringement of his Sixth Amendment right to counsel during the first appeal instituted by the State."  Filing No. 21, Part 9 at 13, Postconv. Order at 6.  The court found that "the defendant was denied counsel at the appellate stage.  Despite the fact that there was counsel of record, the attorney took no action during the appeal process to represent the interests of the defendant (thinking he had withdrawn from representation)."  *Id.* at 5.  Further, the court stated that "[u]nder the circumstances of this case, it is appropriate for prejudice to the defendant to be presumed i.e. he was denied counsel at a critical stage of the proceedings."  *Id.*  Noting that it had

---

[4]The State's brief was signed by attorney Lisa D. Stream, and submitted by Ms. Stream and Robert Parker, of Seiler & Parker, P.C., L.L.O., Hastings, Nebraska, as attorneys for the State of Nebraska.  Filing No. 44, Part 2 at 18, Postconv. Br. at 16.

"jurisdiction and power in postconviction proceedings to grant a new appeal," it granted the relief requested by the State. *Id.* It accordingly "vacated" the sentence imposed by the Court of Appeals.[5] *Id.* at 6. The court did not appoint counsel for Silva, nor did it reappoint Silva's counsel to represent him on appeal. The State did not appeal the Adams County District Court order. *See* Filing No. 54, Transcript of Status Conference ("Status Conf. Tr.") at 7.

### D.   Johnson County Action

Silva completed his federal sentence in April 2000, after having served 52 months of his 71-month sentence.[6] See Filing No. 31, Silva Aff. at 2. He was then transferred to the Nebraska Department of Correctional Services facility at Tecumseh, Nebraska, to serve his state sentence. *See id.* As recounted above, Silva had been granted postconviction relief in 2002.

Nebraska correctional officials, however, refused to recognize the postconviction order, and instead calculated Silva's release date under the Nebraska Court of Appeals sentence. Filing No. 21, Part 6, Petition at 6-8. Accordingly, on January 29, 2003, Silva filed a *pro se* petition for an alternative writ of mandamus in Johnson County, Nebraska (the county in which he was incarcerated), asking the court to compel Nebraska correctional officials to comply with the Adams County Court's order granting postconviction relief in calculating his release date. *See id.* at 5-6. Silva alleged that Correctional Center officials

---

[5]This court noted in its earlier order that this phrasing was unfortunate, but that in the context of the postconviction case, the parties would have or should have understood that the new appeal was granted to the State. See Filing No. 43, Mem. & Order at 10.

[6]That length of time represents Silva's federal sentence less 11 months (or 15%) for good behavior and less approximately 8 months credit for time served in federal custody.

7

had taken the position that "the Adams County District Court did not have authority to vacate the decision of the Nebraska Court of Appeals" and correctional officials "would not adopt the decision of the Adams County District Court."[7]  *Id.* at 6.  Silva further alleged that the "files in the possession of the Respondents incorrectly state that Petitioner must serve a twenty-five (25) years to fifty (50) years cumulative sentence, rather than a ten (10) to twenty (20) years cumulative sentence."  *Id.* at 7.  Essentially, Silva sought recalculation of his prison time under the original sentence rather than the Appeals Court sentence.  *See id.*

The record shows that the State, then represented by Assistant Attorney General Amber Herrick, moved to dismiss the action.[8]  Filing No. 21, Part 11, Journal Entry dated June 30, 2003.  In a journal entry, the Johnson County District Court ruled as follows: "The Court hereby grants the motion to dismiss.  The Court finds the matter is now moot.  There was no objection made on behalf of plaintiff."  *Id.*  At some time thereafter, prison officials recalculated Silva's release date in conformity with his original sentence.   See Filing No. 21, Part 14 at 4, State's petition for mandamus at 3.  Silva's projected release date was June 21, 2006.[9]  *Id.*; Filing No. 1, Habeas Corpus Petition at 5; *compare* Filing No. 21, Part

---

[7]Interestingly, this is the same argument that the State made to the Nebraska Supreme Court in its application for mandamus relief, and now argues in this action.

[8]Apparently, the State can produce no records of the proceeding other than a skeletal docket sheet and journal entry.  Accordingly, the premise of the State's motion is not known.

[9]In its earlier order, this court noted that the dismissal of the action as moot, without objection by plaintiff, would indicate that Nebraska corrections officials had complied with the postconviction order.  Filing No. 46, Mem. & Order at 12 n.8.  The Department of Corrections' subsequent calculation of Silva's time under the original sentence lends credence to the  scenario.  The State has presented no evidence that challenges the logic or factual accuracy of that premise.

14 at 4, State's Petition for Mandamus at 3 (noting calculation of release date under original sentence).

## E.    The State's Mandamus Petition

As further discussed below, Silva filed this federal habeas corpus petition on September 3, 2004, challenging the calculation of his release date by prison officials. Shortly after Silva's habeas corpus action was filed, and apparently prompted by the indication that Silva was scheduled to be released in June 2006, the State mounted an effort to have the Court of Appeals' increased sentence reinstated.  The State, then represented by Assistant Attorney General Susan Gustafson, sought and received an extension of time to answer in this action, pending its pursuit of a petition for a writ of mandamus in the Nebraska Supreme Court.  Filing Nos. 6, Motion & 8, Order.  The State applied to the Nebraska Supreme Court for leave to commence an original action, and then filed a petition for a peremptory or alternative writ of mandamus in the Supreme Court, naming Adams County District Judge Terri Harder as respondent.  Filing No. 21, Part 14, Application at 1, Petition at 2; Filing No. 35, Part 2 at 1-3, Supreme Court Cases Nos. S-33-40045 & S-04-1476, docket sheets.

In its mandamus petition, the State contended that the Adams County District Court's postconviction order violated the doctrine of "vertical stare decisis" and Neb. R. Ct. Prac. 2E(5)[10] and was *void ab initio*, making the Appeals Court's sentence the "law of the case." Filing No. 21, Part 14 at 4, Petition at 3.  It argued that "an order issued by the district court

---

[10]That rule provides: "Opinions of the Court of Appeals which the deciding panel has designated as 'For permanent publication' shall be followed as precedent by the courts and tribunals inferior to the Court of Appeals until such opinion is modified or overruled by the Nebraska Supreme Court."  Neb. R. Ct. Prac. 2(E)(5).

9

in the absence of authority to do so is a void order" that may be attacked at any time.  *Id.,* Part 14 at 5, Petition at 4.  Neither Silva nor his counsel were served with a copy of the mandamus petition.[11]

In a docket notation, the Nebraska Supreme Court granted the writ.  Filing No. 21, Part 3, Case No. S-04-1476, Supreme Court Docket Sheet at 2.  The Supreme Court ordered Judge Harder to "forthwith vacate and set aside her order of February 5, 2002, which granted the defendant a new direct appeal . . . or show cause why a peremptory writ commanding respondent to do so should not issue."  *Id.*  Judge Harder complied and vacated her postconviction order.  Filing No. 21, Part 10, Adams County District Court Order dated December 30, 2004.  The Nebraska Department of Correctional Services then adjusted Silva's projected release date by eighteen years, from June 21, 2006, to June 14, 2024, in conformity with the sentence of the Nebraska Court of Appeals.  S*ee* Nebraska Department of Correctional Services website at http:///dcs-inmatesearch.ne.gov/Corrections (noting projected release date of June 17, 2024).

## F.    Federal Habeas Corpus Action (the present action)

### 1.    Procedural History

---

[11]The State contends that its motion for an extension of time in this action provided Silva with notice of the mandamus proceeding.  See Filing No. 33, Respondent's Brief at 1-2.  The State acknowledges, however, that it provided copies of its mandamus petition to Silva's counsel only <u>after</u> the Nebraska Supreme Court had issued the writ.  *Id.* at 2.  The sequence of events was as follows:  The State filed its mandamus petition on December 20, 2004; the writ was granted on December 29, 2004; Judge Harder vacated the postconviction order on December 30, 2004; at the request of Silva's counsel, the state sent a copy of the mandamus petition and order to Silva's counsel on January 4, 2005; Silva moved to intervene in the Supreme Court action on January 10, 2005; the Supreme Court denied Silva's motion as untimely on January 12, 2005. Filing No. 35, Part 2 at 3, Supreme Court docket sheets; Filing No. 33, State's Brief at 2; Filing No. 21, Part 10, Order at 1.

On September 3, 2004, Silva filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this court.  Filing No. 1, Habeas Corpus Petition.  In the *pro se* petition, a form pleading provided by the Clerk of Court to prisoners, Silva first stated that he had succeeded in state court on his constitutional claim.  *Id.* at 2.  He noted that he had not appealed the postconviction action because "[o]riginal sentence was reinstated, no standing to appeal as State was party that appealed sentence."  *Id.* at 3.  He challenged the Nebraska correctional officials' calculation of his release date as June 21, 2006, contending that the time he had served in county jail—936 days from the date of his arrest on September 27, 1994 until his federal sentencing on April 21, 1997—should be credited against his state court sentence.  Filing No. 1, Petition at 5.  He argued that confinement by the state for longer than his original ten-year state court sentence would be unlawful.  *Id.* at 6.  Attorney Mary Wickenkamp later entered an appearance as counsel for Silva.  Filing Nos. 6 & 9.  On initial review, the court found that summary dismissal was not appropriate and ordered the State to answer or otherwise respond to Silva's petition.  Filing No. 10.

As recounted above, the State moved for an extension of time in which to file for mandamus relief in the Nebraska Supreme Court and then relied on the subsequent vacating of the postconviction order to support its motion for summary judgment.  Filing No. 23, State's summary judgment brief at 3.  It also argued that Silva's petition was untimely under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and that Silva had defaulted his claims by failing to raise them on direct appeal.  *Id.* at 4-7.

Noting that it was "troubled by the State's conduct in the course of [Silva's] proceedings," this court denied the State's motion, ordered briefing on the merits, and directed the State to address several issues in its brief.[12]  Filing No. 32, Mem. & Order at 4-5.  In its brief in response to the court's order, the State conceded that Silva would be entitled to 640 additional days of credit for time served if his state sentence were concurrent to his federal sentence, but argued that the Nebraska Court of Appeals had ordered Silva's state sentence to run consecutively to his federal sentence.  Filing No. 33, State's brief at 3, 10.  It argued that the Adams County District Court did not have the authority to vacate the Appeals Court's sentence on postconviction review and its postconviction order was void.  *Id.* at 7.  Interestingly, the State argued that Silva's postconviction action should have been filed in the Nebraska Court of Appeals, rather than the Adams County District Court.  *Id.* at 6.  The State further argued that Silva had not stated a claim under § 2254 because the failure to grant proper credit for time served is a matter of state law and does not present a federal constitutional issue.  *Id.* at 5.  Finally, the State asserted the affirmative defenses that Silva's petition was barred by the statute of limitations and procedurally defaulted because he failed to exhaust available state court remedies.  *Id.* at 4-5.

---

[12]The court asked the State to address the issue of notice to Silva of its mandamus application and to explain why the State should not be estopped from disclaiming its concession in state court that Silva's constitutional rights had been violated.  Filing No. 32, Mem. & Order at 5.  With respect to the notice query, the State responded that it was not required to serve its mandamus petition on Silva, and argued that Silva nevertheless was provided notice of the proceeding by way of the motion for extension of time that it filed in this court.  Filing No. 33, State's brief at 1-2, 5-6.  In response to the court's estoppel query, the State contended that it should not be held to the position it took in the postconviction case because the Adams County District Court's postconviction order was void.  *Id.* at 7-8.

12

On January 17, 2007, Silva filed a motion for appointment of new counsel because his attorney had been suspended from the practice of law.[13]   Filing No. 45.   The court granted the motion.   Filing No. 46, Mem. & Order at 15.   After the court conducted an exhaustive review of the voluminous evidence submitted by the parties and made certain factual findings, the court appointed the federal public defender to represent Silva in this action.   *Id.* at 3-15.   Silva was also granted leave to file an amended petition.   *Id.* at 15.

At a status hearing in connection with the motion for appointment of counsel, the following colloquy ensued:

> THE COURT: When I was reviewing this case there were so many procedural problems with it in the state court that I believe that it rose to the level of substantive due process problems, as well as procedural due process problems.
>
> There was some thought that the state supreme court ought to resolve this procedural problem.   But then I received a brief from Mr. Brown and he believes that nothing inappropriate was done by the supreme court and that the attorney general's office did not mischaracterize the record.
>
> Mr. Brown, are you willing to go back to the state court on this, or do you want to proceed forward in the context as the case procedurally sits today?
>
> MR. BROWN: I think our inclination would be – we frankly have looked at this and we would completely concur with the court, at least with respect to the

---

[13]Silva's counsel was later disbarred.   Silva's counsel's shortcomings were noted in the court's earlier order.   See Filing No. 46.   The State later noted in the brief it submitted in support of its motion to reconsider the court's order that:

> This case is a mess. It became a mess long before Assistant Attorney General Gustafson had any responsibility for this action. The parade of nonfeasance, professional errors of judgment and misstatements of law made by numerous attorneys who have been involved in the progression of this matter is indisputably difficult to comprehend and even more difficult to rationally unravel.   We certainly appreciate this Court's frustration and ire with the quality of the legal representation Silva has received before this Court and before the Nebraska courts.

Filing No. 49, State's brief at 1.

fact that unraveling this is a real challenge, and I'm not sure anybody can answer any questions about where we are with a great deal of certainty.

I am comfortable in the conclusion that the relief requested from the Nebraska Supreme Court on the writ of mandamus was appropriate and that the court's order and the issuance of that writ was appropriate.

Filing No. 54, Status Conf. Tr. at 4-5.  The State later stated that it had no objection to the court's proposal that the parties brief the issues and the magistrate judge expedite the progression of the case.  *Id.* at 8.

**2.    Silva's Claims**

In his amended petition for a writ of habeas corpus, Silva argues that his continued confinement violates the Fifth, Sixth and Fourteenth Amendments to the Constitution.  He asserts three claims for relief.  First, he asserts that he was denied counsel on appeal as guaranteed by the Sixth Amendment to the Constitution, and also asserts that his counsel was ineffective in failing to notify him of the State's appeal and in failing to make an appearance on his behalf in the Nebraska Court of Appeals.  Second, he contends that his continued confinement due to denial of proper credit for time served violates substantive and procedural due process.  Third, he alleges that the State violated his procedural and substantive due process rights by filing for mandamus relief in the Nebraska Supreme Court.

In its answer to the petition, the State, now represented by Assistant Attorney General Kirk Brown, asserts that Silva is properly incarcerated and has not completed serving the sentence ordered by the Nebraska Court of Appeals which remains "a valid and final judgment of the Nebraska courts."  Filing No. 56, Answer at 3.  It further contends, for the first time, that Silva's state court postconviction action has not been dismissed and

14

remains pending.[14]   Filing No. 64, State's merits brief at 13-15.   The State raises the defense of failure to exhaust state court remedies with respect to Silva's claim of denial of counsel on appeal.   In answer to the merits of the claim of denial of counsel, it first asserts that Silva was, in fact, provided counsel on direct appeal and alternatively posits that Silva

---

[14]At the status conference in this case, the following colloquy took place:

THE COURT:  Which one do you believe is still pending?

MR. BROWN:  The one I believe is still pending is the state post-conviction action filed in the county of his conviction.  The effect of the district court's response to the alternative writ of mandamus was to vacate the order of relief that was originally issued.  And, as we've indicated, we believe that order from the Nebraska Supreme Court was appropriate.  What that seems to leave open is the question of what the appropriate relief under the facts found by the district court might be.  And all we have been able to determine is, having reviewed the docket of the district court, no order dismissing that action, its original grant of relief was vacated, but the action was not dismissed, the alternative writ of mandamus did not request that the action be dismissed.  The focus of that was simply upon an inappropriate grant of relief.  So I just wanted you to be aware, to the extent that we have any more confidence than anybody else we know exactly where this case is, I think the possibility exists that Mr. Silva's post-conviction action is untended, but still alive in the district court.

THE COURT: Your position is that after all of these years the state still has the right to appeal the judge's decision?

MR. BROWN: No. That's not my point. My point is that Mr. Silva still has an active -- may well still have an active post-conviction action pending in the state district court.

THE COURT: But you never appealed the decision of the state district court.

MR. BROWN: That's correct.

THE COURT: And your time for doing that is probably finished.

MR. BROWN: What now?

THE COURT: Your time for appealing the district court judge's ruling has probably come and gone.

MR. BROWN: That's correct, and that was why we chose the writ of mandamus as a means to correct what we thought was an order of relief that was simply void.

THE COURT: If you didn't appeal it when you were supposed to, how do you effect an appeal for which you are out of time by filing a writ of mandamus to the court?

MR. BROWN: By alleging that the relief granted was not erroneous, but void.

Filing No. 54, Status Conf. Tr. at 6-8.

affirmatively elected to proceed without legal counsel and thus he had no legitimate expectation of the assistance of counsel. *Id.* at 10.

As a defense to Silva's claim of denial of due process in the calculation of his sentence, the State asserts that Silva failed to fairly present the claim to Nebraska courts, has not exhausted the claim and/or has procedurally defaulted on the claim. *Id.* at 11. On the merits of the improper denial of good time claim, it argues that the question of whether Silva has completed serving his sentence presents purely an issue of state law and "Silva's request for state postconviction relief from those sentences remains pending in the state trial court." *Id.* at 12.

The State again asserts failure-to-fairly-present, exhaustion, and procedural bar defenses in response to Silva's claim of a due process violation in connection with the State's application for a writ of mandamus. *Id.* at 12-13. As to the merits of that claim, it asserts that it complied with all applicable procedural requirements in seeking the alternative writ of mandamus, acknowledging, however, that

> Silva did not present this claim when he pled his pending state postconviction action. However, because these events took place after Silva pled his present postconviction proceeding, it is not clear whether Silva could include this claim it his pending postconviction proceeding or properly raise it in a subsequent postconviction filing.

*Id.* at 13-14. In addition, the State affirmatively acknowledges that it has waived or abandoned the statute of limitations defense it raised earlier. *Id.* at 15.

## II.    Legal Analysis

### A.    Background

16

In his amended petition, Silva asserts that he is illegally confined by reason of three unconstitutional actions by the State. Those are: the State denied him counsel on appeal; the State denied him proper credit for time served; and the State improperly pursued a writ of mandamus to lengthen his sentence. In its earlier opinion, the court noted:

> The record shows that Silva's claim, however characterized, does not involve a mere denial of credit for time served, but presents a constitutional challenge to the sentence imposed by the Nebraska Court of Appeals. The credit-for-time-served claim necessarily depends on a determination of whether Silva's original sentence (amounting to roughly ten years) or the sentence imposed on appeal (roughly twenty-five years), later found not to withstand constitutional scrutiny, can be validly imposed on Silva.

Filing No. 46, Mem. & Order at 6. Contrary to the State's assertion, Silva's claim does not involve a mere calculation of credit for time served under state law. Resolution of the credit-for-time-served issue depends on the determination of the legitimacy of either Silva's original sentence (under which his federal and state time were concurrent and he would benefit from the application to the credit to his federal sentence) or the sentence imposed by the Nebraska Court of Appeals (under which any credit applied to his federal sentence would not affect his state consecutive sentence). In spite of the State's efforts to confuse the issues, the heart of this case is whether the State can legitimately continue to confine Mr. Silva under the sentence that imposed the consecutive time.

At the inception of this action, Petitioner sought this court's assistance in interpreting and enforcing a valid and enforceable state postconviction order which declared that the consecutive sentence imposed by the Nebraska Court of Appeals had been imposed in violation of the United States Constitution. According to the postconviction order, the Appeals Court sentence was, under the terms of the Nebraska Postconviction Act, a "void

17

or voidable" sentence.  The State's conduct in obtaining a writ of mandamus *after* Silva's initiation of this action resurrected the Appeals Court's sentence.  That conduct has served to effectuate and perpetuate Silva's initial constitutional injury–the denial of counsel on appeal.  The court finds Silva's claim can properly be characterized as a single claim for violation of Fifth and Sixth Amendment rights premised on three discrete actions by the State.[15]  The facts of this case show a constitutional violation that demands that the court address Silva's claim.

### B.    Exhaustion

#### 1.    The Law

A state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus.  *Picard v. Connor,* 404 U.S. 270, 275 (1971).  The exhaustion-of-state-remedies doctrine is now codified in the federal habeas statute.  *Id.*; 28 U.S.C. § 2254 (b)(1).  The doctrine "reflects a policy of federal-state comity, 'an accommodation of our federal system designed to give the State an initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'" *Picard,* 404 U.S. at 275 (*quoting Wilwording v. Swenson,* 404 U.S. 249, 250 (1971) (per curiam)).  Once the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied.  *Id.*  (stating that "[o]nly if the state courts have had the

---

[15]Whether each of the actions in this tortuous sequence of events has been presented to Nebraska courts as a separate constitutional claim is of no consequence to the court's ultimate resolution of Silva's habeas corpus claim.  The central issue in the case is the vindication of Silva's right to counsel to defend against the State's appeal.  That issue has been presented to, and resolved by, Nebraska courts.  This court's resolution of that claim would be the same whether or not the state's later actions amount to a separate due process violation.

first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies").

"The question of exhaustion 'refers only to remedies still available at the time of the federal petition,' it requires federal courts to ask whether an applicant for federal relief could still get the relief he seeks in the state system." *O'Sullivan v. Boerckel,* 526 U.S. 838, 850 (Stevens, J., dissenting) (*quoting Engle v. Isaac,* 456 U.S. 107, 125-26 n.28 (1982)); *see O'Sullivan*, 526 U.S. at 848 (Court's opinion) (noting agreement with the dissent's description of the law of exhaustion and procedural default). If the applicant currently has a state avenue available for raising his claims, a federal court, in the interest of comity, must generally abstain from intervening. *Id.* at 850. "State-court remedies are described as having been 'exhausted' when they are no longer available, regardless of the reason for their unavailability," including a petitioner's failure "to comply with the deadline for seeking state-court review or for taking an appeal." *Woodford v. Ngo,* — U.S. —, —,126 S. Ct. 2378, 2387 (2006); *see also Gray v. Netherland,* 518 U.S. 152, 162-63 (1996).

State petitioners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process. *O'Sullivan,* 526 U.S. at 845. Also, the petitioner must "fairly present" the "substance" of his federal habeas corpus claim to the state courts. *Anderson v. Harless,* 459 U.S. 4, 6 (1982). In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts. *Carney v. Fabian,* 487 F.3d

19

1094, 1096 (8th Cir. 2007) (noting that state courts must be alerted to the fact that petitioners are asserting claims under the United States Constitution).

Exhaustion, however, is not required in those instances where "there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any claim to obtain relief." *Duckworth v. Serrano,* 454 U.S. 1, 3 (1981); *O'Sullivan,* 526 U.S. at 847 ("[N]othing in our decision today requires the exhaustion of any specific state remedy when a State has provided that remedy is unavailable."). "The [Supreme] Court has frequently recognized that the policy underlying the exhaustion-of-remedies doctrine does not require the exhaustion of inadequate remedies." *See Boumedienne v. Bush*, — U.S. —, 127 S. Ct. 1478 (April 2, 2007) (quotation omitted) (Mem.) (Stevens and Kennedy, JJ., dissenting from denial of cert.), *reh'g granted, vacated, cert. granted,* 127 S. Ct. 3078 (June 29, 2007) (Mem.).

Petitioners with "mixed petitions"—those with exhausted and unexhausted claims—have two options. *Rose v. Lundy,* 455 U.S. 509, 520-522 (1982) (plurality opinion). "They may withdraw a mixed petition, exhaust the remaining claims, and return to district court with a fully exhausted petition" or "may proceed with only the exhausted claims, but doing so risks subjecting later petitions that raise new claims to rigorous procedural obstacles." *Burton v. Stewart,* — U.S. —, —, 127 S. Ct. 793, (2007); *see also Slack v. McDaniel,* 529 U.S. 473, 486-487 (2000). Alternatively, federal district courts have the discretion to stay a habeas corpus proceeding and hold it in abeyance pending exhaustion in state court. *Rhines v. Weber,* 544 U.S. 269, 277-78 (2005); *see also Panetti v.*

20

*Quarterman,* — U.S. —, —, 127 S. Ct. 2842, 2854 (2007) (rejecting "empty formalities" in interpretation of exhaustion and successive petition provisions in AEDPA).

## 2.   Analysis

The court finds that Silva has exhausted his claim because he has shown either that he has presented the claim or that he has no vehicle by which to present it to Nebraska courts. Silva's denial-of-counsel claim was fairly presented to Nebraska courts in his postconviction action.[16] Even if it had not been, exhaustion would be futile. The State has relied on various and contradictory rationales and has advanced technical and procedural roadblocks to the consideration of the merits of this case by either state or federal courts.[17] This court questions the availability of any opportunity for Silva to obtain relief in state court, either through an appeal or a postconviction action, even though relief is clearly appropriate. The State has argued, at various times, that appeals of the Adams County postconviction order, the Johnson County mandamus order, the Supreme Court's mandamus order, and the Adams County order vacating its earlier postconviction order are all time-barred. It concedes that it resorted to the mandamus remedy to get the result that was foreclosed by its own failure to timely appeal the postconviction order. Remarkably, it now contends that Silva's original postconviction action *remains pending* in Adams County District Court as a

---

[16]There can be no doubt that the issue was presented as a matter of federal Constitutional law. The postconviction court's decision cited federal caselaw.

[17]The State is playing a procedural "shell game." As one example, when given the option by this court to return to state court, the State refused because it was "comfortable in the conclusion that the relief requested from the Nebraska Supreme Court on the writ of mandamus was appropriate and that the court's order and the issuance of that writ was appropriate." Filing No. 54, Status Conf. Tr. at 4-5.

viable avenue for pursuit of Silva's claims.[18]  The State has provided no authority for this contention.

The Adams County District Court order vacating its earlier postconviction ruling is a final order and the time to appeal that order has passed.  A second postconviction petition by Silva would be labeled successive.  The court has not been presented with any authority that indicates that any Nebraska court would now hear Silva's claim.  The State can point to no provision in Nebraska statutes or to any caselaw that would permit any review of the Nebraska Supreme Court's writ of mandamus.  The writ was issued by the State's highest court and Silva's attempt to intervene in the action was rejected as untimely.  Because, under the State's theory, no lower court can reverse a higher court, postconviction relief would surely be foreclosed and the State's argument is therefore meritless.

The state postconviction court made the finding that structural constitutional error had occurred in the State's statutorily-authorized appeal of Silva's sentence.  The State's corrective process has been shown to be deficient to remedy the constitutional violation in this case.  Uncontroverted records of state court proceedings document Silva's unsuccessful efforts to seek redress.  State courts have been presented with several opportunities, through motions to reconsider, motions to vacate or to set aside, and motions to intervene, but have failed to address the issues.

Under these circumstances, the prospect of any meaningful consideration by state courts is a matter of pure conjecture.  The foregoing demonstrates that further exhaustion would be futile.  The State's posture in this case to date suggests the Silva would face

---

[18]The court cannot reconcile the State's arguments that Silva's claims are both procedurally barred and premature at the same time.

further dilatory tactics and delay in any further attempts to secure a state court remedy. Silva has been incarcerated since 1994 and was at one point scheduled to be released in 2006.  On the eve of his release, the State engineered his continued incarceration through the mandamus proceeding.  This court is persuaded that Silva's pursuit of his claims in state court would be futile.  Under the circumstances, the court finds further exhaustion of state remedies is unnecessary.

### C.    Procedural Default.

#### 1.    The Law

The procedural bar doctrine is a corollary to the habeas statute's exhaustion requirement.  *See Dretke v. Haley,* 541 U.S. 386, 388 (2004) (stating that the concepts of exhaustion and procedural bar are related, but distinct, concepts).  The procedural default doctrine is a separate waiver doctrine, crafted to protect the integrity of the exhaustion provision.  *See O'Sullivan,* 526 U.S. at 853 (Stevens, J., dissenting); 848 (noting Supreme Court's agreement); *Engle v. Isaac,* 456 U.S. at 125-26 n.28 (1982) ("[T]he problem of waiver is separate from the question whether a state prisoner has exhausted state remedies.").

Under the concept of procedural bar, the failure of a prisoner to invoke an available state procedure may provide the basis for the conclusion that he has waived a claim. *O'Sullivan,* 526 U.S. at 853.  This failure to comply with the state's procedural rules can furnish an independent and adequate state ground of decision that will block federal collateral review.  *See Harris v. Reed,* 489 U.S. 255, 262 (1989); *Coleman v. Thompson,* 501 U.S. 722, 729-30 (1991) (stating that the procedural bar doctrine operates to bar

23

federal habeas corpus review when a state court declines to address a petitioner's federal claims because the prisoner has failed to meet a state procedural requirement—"[i]n these cases, the state judgment rests on independent and adequate state procedural grounds").

A state procedural rule is "independent" if it is not linked to or dependent on federal law. *Easter v. Endell,* 37 F.3d 1343, 1345 (8th Cir. 1994). A state procedural ruling meets the due process requirement of adequacy only if it is firmly established and regularly followed. *Lee v. Kemna,* 534 U.S. 362, 376 (2002) ("[t]o be adequate, a state's procedural rule must be proclaimed in advance and regularly followed"); *Ford v. Georgia,* 498 U.S. 411, 424 (1991) (noting that a court will decline to apply a procedural rule when a defendant could not be deemed to know of its existence); *Easter,* 37 F.3d at 1345. The "adequate and independent" state law ground applies with equal force whether the state law ground is substantive or procedural. *Lee v. Kemna,* 534 U.S. at 375.

Also, "there are, however, exceptional cases, in which the exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Id.* at 376 (finding the ordinarily "unassailable" procedural rule requiring a contemporaneous objection was inadequate to bar consideration of a defendant's due process claim in a case involving an "unusual sequence of events" that included the State's belated reliance on the rule and a lack of caselaw that required "flawless compliance" with the rule). "'[T]he adequacy of state procedural bars to the assertion of federal questions,' is not within the State's prerogative finally to decide; rather, adequacy 'is itself a federal question.'" *Id.* at 375 (*quoting Douglas v. Alabama,* 380 U.S. 415, 422 (1965)). "'[F]ailure to follow state procedures will warrant withdrawal of a federal remedy only if those

procedures provided the habeas petitioner with a fair opportunity to seek relief in state court.'" *Easter v. Endell,* 37 F.3d at 1347 (*quoting Harmon v. Ryan,* 959 F.2d 1457, 1461 (9th Cir. 1992)).

An adequate and independent state procedural disposition, however, provides only a strong prudential reason not to address a defaulted constitutional claim that is presented for federal habeas review. *Dretke*, 541 U.S. at 392-93. A procedural default can be excused in certain circumstances where the factual predicate of the claim has been presented to a postconviction court and the petitioner has made an effort to bring it to the attention of appropriate state courts. *Clemmons v. Delo,* 124 F.3d 944, 946 n.1, 948-50 (8th Cir. 1997); *Easter v. Endell,* 37 F.3d at 1345 (stating "[f]ederal courts always have the equitable power to look beyond a state procedural bar and proceed to the merits of a habeas corpus petition").

Even if a state court's refusal to reach the merits of a petitioner's claim is premised on an "adequate and independent" state law ground, courts recognize an equitable exception to the bar when a habeas applicant can demonstrate cause and prejudice for the procedural default.[19] *Dretke,* 541 U.S. at 393 (noting that "the cause and prejudice requirement shows due regard for States' finality and comity interests while ensuring that

---

[19]Although not relevant in this case, the court notes that a procedural bar can also be excused by showing a "fundamental miscarriage of justice." Under the "fundamental miscarriage of justice" exception, no showing of cause is required in cases "where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." *Dretke,* 541 U.S. at 394. This narrow exception applies to claims of error in capital sentencing as well as to convictions, but the Supreme Court has expressly declined to address the issue of whether the actual innocence exception also extends to noncapital sentencing error. *Id.* at 393 (noting that for the most part, victims of a fundamental miscarriage of justice will meet the cause-and-prejudice standard and that the availability of ineffective assistance of counsel claims—either as a ground for cause or as a freestanding claim for relief—further safeguard against miscarriages of justice).

fundamental fairness remains the central concern of the writ of habeas corpus"). The cause

and prejudice standard applies to defaults on appeal as well as at trial. *Murray v. Carrier,*

477 U.S. 478, 491 (1986).

To show cause excusing procedural default, a petitioner must show that some

"objective factor external to the defense" impeded the petitioner's efforts to raise the claim

in state court. *Id.*; *Turner v. Delo,* 69 F.3d 895, 896-97 (8th Cir.1995); *see, e.g., Coleman,*

501 U.S. at 753 (cause to excuse procedural default exists if legal claim was unavailable);

*Reed v. Ross,* 468 U.S. 1, 14-15 (1984) (cause to excuse procedural bar exists if default

was not "attributable to an intentional decision" of petitioner); *Ivy v. Caspari,* 173 F.3d 1136,

1141 (8th Cir. 1999) (holding that the nondelivery of a pleading that is not the result of any

want of attention on the part of the petitioner is an external impediment that amounts to

cause). Constitutionally deficient performance of appellate counsel is "cause" to forgive a

procedural default. *Taylor v. Bowersox,* 329 F.3d 963, 971 (8th Cir. 2003). To show

prejudice, a petitioner must show a reasonable probability of a different result. *See, e.g.,*

*Hall v. Luebbers,* 296 F.3d 685, 696 (8th Cir. 2002); *Parkus v. Delo,* 33 F.3d 933, 940 (8th

Cir. 1994). A reasonable probability is a probability sufficient to undermine confidence in

the outcome. *Parkus*, 33 F.3d at 938.

### 2.    Analysis

The court finds that the State's reliance on a procedural default is unavailing. The

procedural rules on which the State relies are not adequate to preclude this court's review

of Silva's constitutional claims. The State has asserted several purported instances of

default. First, the state asserts that Silva defaulted his claim by failing to appeal his

conviction and sentence.  Next, the State premises default on Silva's failure to appeal the Adams County District Court's postconviction order.  The State also argues that a procedural bar applies by reason of Silva's failure to appeal the Johnson County order, and last contends that Silva defaulted his claims involving the State's mandamus action by failing to challenge the Nebraska Supreme Court's issuance of the writ in a Nebraska state court.

Ordinarily, the application of Nebraska procedural rules on time limits, successive petitions and abandonment of claims would arguably provide the procedural bar that would foreclose review by this court.  In the context of this case, however, those ordinarily adequate grounds operated in conjunction with the State's unorthodox maneuver of circumventing the State's postconviction remedies by way of mandamus.  There has been no demonstration that the unusual procedure employed by the State to resurrect the Appeals Court's sentence and lengthen Silva's term of incarceration is a procedure that is either firmly established or regularly followed so as to be adequate to preclude this court's review.[20]  The State has pointed to no statute or any caselaw that permits a final order by a postconviction court to be overturned via a mandamus action many years after the order, never having been appealed by either party, became final.  Nor can the State cite any other case in which this procedure has been employed.  The State's invocation of state court rules regarding timeliness as creating Silva's supposed "waiver" of his constitutional claims

---

[20]  The court knows of no other example of the use of the mandamus remedy in circumstances similar to these.  The court would hope that the facts presented in this case represent an anomaly due to miscommunication between the numerous attorneys acting as agents of the State over the length of this litigation and is not the result of either a calculated or routine effort to deprive a defendant of his constitutional rights.

is "an exorbitant application" of an ordinarily sound rule when applied to the circumstances and sequence of Silva's case.

Moreover, in arguing that Silva either failed to pursue or waived his rights, the State attempts to disavow the representations it made to Nebraska courts in two separate actions. The State ignores the reality presented in this record: that Silva was successful in his postconviction action and had no reason to appeal the Adams County District Court's order. Silva could not have abandoned or waived any claim—he was satisfied with the results of his postconviction action. The State wholly ignores the fact that Silva *actually prevailed* in vindicating his constitutional rights when he obtained the ruling that the Appeals Court's sentence contravened the United States Constitution. In a separate action to enforce the postconviction order, with the apparent assent of the State, Silva was successful in a challenge to the Department of Corrections' calculation of his sentence, resulting in the recalculation of his release time under the original sentence. Under the circumstances of this case, state court procedures are not adequate to bar this court's consideration of Silva's claim.

Moreover, if Silva had procedurally defaulted his claims, he has shown cause and prejudice to overcome any bar imposed by the default. Even under the State's purported scenario—that Silva, and not the State, had been granted the right to appeal in the postconviction action—cause to overcome the procedural bar would be furnished by the ineffective assistance of Silva's counsel in failing to file the appeal or by the court's failure to appoint counsel to represent Silva. Prejudice, of course, can be shown by the resultant 18-year increase in Silva's sentence.

As noted in this court's earlier opinion, it appears that the Nebraska Supreme Court was not presented with a complete picture of the facts when presented with the State's petition for a writ of mandamus. Accordingly, there are no strong prudential reasons or considerations of comity that compel this court to pass on Silva's constitutional claims.

### D.  Claims on the Merits.

#### 1.  The Law

##### a.  General Habeas Corpus Standards

United States District Courts may issue writs of habeas corpus on behalf of prisoners who are "in custody in violation of the Constitution of the United States." 28 U.S.C. §§ 2242(c)(3), 2254(a); *Peyton v. Rowe,* 391 U.S. 54, 55 (1968). The writ of habeas corpus is a procedural device for subjecting executive, judicial or private restraints on liberty to judicial scrutiny. *Peyton,* 391 U.S. at 58 (stating that the writ of habeas corpus "assures among other things that a prisoner may require his jailer to justify the detention under the law"). The writ of habeas corpus plays a vital role in protecting constitutional rights. *Slack v. McDaniel,* 529 U.S. 473, 483 (2000).

A prisoner is in custody in violation of the Constitution for purposes of habeas relief "if any consecutive sentence [the prisoner is] scheduled to serve was imposed as the result of a deprivation of constitutional rights." *Garlotte v. Fordice,* 515 U.S. 39, 40 (1995) (*quoting Peyton,* 391 U.S. at 64-65). A challenge that, if successful, would advance a release date, or shorten the term of incarceration "implicates the core purpose of habeas review." *Garlotte,* 515 U.S. at 47; *see also Peyton,* 391 U.S. at 66-67.

Under the AEDPA, an application for writ of habeas corpus can be granted on a claim that was adjudicated on the merits in state court if the adjudication either resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1) & (2).  Under the "contrary to" clause of subsection (d)(1), a federal habeas corpus court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or "if the state court decides a case differently than th[e Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000).

Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  The determination of a factual issue by a state court is presumed to be correct.  *See* 28 U.S.C. § 2254(e)(1).  A petitioner must rebut the presumption of correctness with clear and convincing evidence.  *Middleton v. Roper,* 455 F.3d 838, 854 (8th Cir. 2006); 28 U.S.C. § 2254(e).  A state court decision is an unreasonable determination of the facts, however, if it is shown that the state court's presumptively correct factual findings are not supported by the record.  *Jones v. Luebbers,* 359 F.3d 1005, 1011 (8th Cir. 2004).

### b.    Nebraska Procedures

Criminal defendants are granted the right to appeal a criminal conviction or sentence under Neb. Rev. Stat. § 29-25-1911 *et  seq.*; *see also State v. Sports Couriers, Inc.,* 313

N.W.2d 447, 448 (Neb. 1981).  In order to obtain appellate review, a notice of appeal must be filed "within thirty days after the entry of . . . judgment."  Neb. Rev. Stat. § 25-1912(1); *State v. Hess*, 622 N.W.2d 891 (2001) (noting that the appellate jurisdiction of a court is contingent upon timely compliance with constitutional or statutory methods of appeal).

Absent specific statutory authorization, the State, as a general rule, has no right to appeal an adverse ruling in a criminal case.  *State v. Vasquez,* 716 N.W.2d 443, 448 (Neb. 2006).  One such specific statutory provision permits a prosecuting attorney to appeal a sentence imposed in a felony case when he or she reasonably believes the sentence is excessively lenient.  *Id.* at 451; Neb. Rev. Stat. §§ 29-2320 to 29-2325.  An appeal pursuant to that statutory authorization can only be taken by the government.  *See Vasquez,* 716 N.W.2d at 452 (noting that "as a general rule, the right to appeal in a criminal case can only be exercised by the party to whom it is given, and only a person aggrieved by a judgment may appeal from it"); Neb. Rev. Stat. § 29-2320.  When an appeal is filed by a prosecuting attorney under the authorizing statute, Nebraska law provides that the trial court "shall appoint a lawyer to argue the case against the prosecuting attorney."  Neb. Rev. Stat. § 29-2318 (referring to actions pursuant to Neb. Rev. Stat. §§ 29-2315.01 to 29-2325).  In an appeal of a sentence by the prosecutor, the Supreme Court or Court of Appeals court may set aside an excessively lenient sentence and either impose a greater sentence or remand the cause.  Neb. Rev. Stat. § 29-2323.

"The Nebraska Postconviction Act, Neb. Rev. Stat. §§ 29-3001 to 29-3004 (Reissue 1995), is available to a defendant to show that his or her conviction was obtained in violation of his or her constitutional rights."  *State v. Miner,* 733 N.W.2d 891, 896-97 (Neb. 2007).

Under Neb. Rev. Stat. § 29-3001, "the jurisdiction of the district court to grant postconviction relief depends on the existence of a factual circumstance whereby there was such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable under the Constitution of the States or the Constitution of the United States." S*tate v. Murphy,* 727 N.W.2d 730, 735 (Neb. App. 2007).  Where a defendant is denied his or her right to appeal because counsel fails to perfect an appeal, the proper vehicle for the defendant to seek relief is through the Nebraska Postconviction Act.  *State v. Meers,* 671 N.W.2d 234, 237 (2003); *State v. Trotter,* 609 N.W.2d at 41 (noting that the trial court has jurisdiction and power to grant a new direct appeal in a postconviction action if a defendant is denied the right to counsel only at the appeal stage in criminal proceedings); *Murphy,* 727 N.W.2d at 733 (Neb. App. 2007) (stating that the Nebraska Postconviction Act grants the district court the jurisdiction and power to grant a new direct appeal and "permits restoration of the convicted defendant's rights and status at the time of counsel's deficient performance on appeal by affording the full statutory time to perfect and prosecute a direct appeal while not disturbing the conviction, unless the appeal discloses reversible error"); *State v. Grigg,* 2001 WL 673459 (Neb. App. 2001) (unpublished opinion) (rejecting argument that the grant of a new direct appeal as postconviction relief by the district court exceeds the relief that may properly be granted under the Nebraska Postconviction Act).

An order sustaining or overruling a motion for postconviction relief is "deemed to be a final judgment, and an appeal may be taken from the district court as provided for in appeals in civil cases." *Murphy,* 727 N.W.2d at 735 (also noting that "[t]he State, of course, maintains its right to appeal the postconviction judgment of the district court"); Neb. Rev.

Stat. § 29-3002.  A motion for postconviction relief cannot be used to secure review of issues which were known to the defendant and which were or could have been litigated on direct appeal.  *State v. Moore,* 718 N.W.2d 537, 542 (2006).  Because of the need for finality in the criminal process, a defendant must bring all claims for relief at the first opportunity.  *State v. Ryan,* 601 N.W.2d 473, 484 (Neb. 1999).  Also, the Nebraska Postconviction Act specifically provides that a "court need not entertain a second motion or successive motions for similar relief on behalf of the same prisoner."  Neb. Rev. Stat. § 29-3001; *State v. Marshall,* 725 N.W.2d 834, 838 (Neb. 2007).

When other remedies are not available, Nebraska law provides the extraordinary remedy of mandamus under Neb. Rev. Stat. §§ 25-2156 to 25-2169.  Mandamus is "an extraordinary remedy, not a writ of right, issued to compel the performance of a <u>purely ministerial</u> act or duty, imposed by law upon an inferior tribunal, corporation, board, or person, where (1) the relator has a clear legal right to the relief sought, (2) there is a corresponding clear duty existing on the part of the respondent to perform the act, and (3) there is no other plain and adequate remedy available in the ordinary course of law."  *State ex rel Steinke v. Lautenbaugh,* 642 N.W.2d 132, 142 (Neb. 2002) (emphasis added).  The general rule is that an act or duty is ministerial if there is an absolute duty to perform in a specified manner upon the existence of certain facts.  *State ex rel. Wieland v. Beermann,* 523 N.W.2d 518, 524 (Neb. 1994).  An assistant attorney general is the agent of the Attorney General and not an independent officer, and his official acts must be performed in the name of his principal.  *State v. Rivera,* 711 N.W.2d 573, 580 (Neb. App. 2006).

### c.    Constitutional Claims

At the time of Silva's postconviction action, a long line of Supreme Court cases established that the Sixth Amendment right to counsel protects the fundamental right to a fair trial. *See, e.g., Gideon v. Wainwright,* 372 U.S. 335, 334 (1963); *Johnson v. Zerbst,* 304 U.S. 458 (1938); *Powell v. Alabama,* 287 U.S. 45  (1932).  The right to counsel is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of the adversary process. *Kimmelman v. Morrison,* 477 U.S. 365, 374 (1986).  The right to effective assistance of counsel at trial is premised on the Sixth Amendment (applied to the states through the Fourteenth Amendment), whereas the procedures employed by states in deciding appeals must comport with the demands of the Due Process and Equal Protection clauses of the Constitution. *Evitts v. Lucey,* 469 U.S. 387, 392-93 (1985); *Ross v. Moffitt,* 417 U.S. 600, 609-10 (1974); *United States v. Gonzalez-Lopez,* — U.S. —, —,126 S. Ct. 2557, 2564 (2006) (stating that the Constitution guarantees a fair trial through the Due Process Clauses, but defines the basic elements of a fair trial, including the right to counsel, through the provisions of the Sixth Amendment).  The Due Process and Equal Protection Clauses of the United States Constitution require the courts to afford a criminal appellant pursuing a first appeal as of right the minimum safeguards necessary to make that appeal adequate and effective. *Halbert v. Michigan,* 545 U.S. 605, 607-08 (2005). Although the Federal Constitution imposes on the states no obligation to provide appellate review of criminal convictions, states that offer such appellate review must appoint counsel to represent indigent defendants in their first appeals as of right. *Id.*; *Douglas v. California,*

372 U.S. 353, 357 (1963) (noting that the fundamental right to counsel extends to a criminal defendant's first appeal as of right).

The right to counsel includes the right to reasonably effective counsel. *Strickland v. Washington,* 466 U.S. 668, 686 (1984). Generally, a defendant claiming ineffective assistance of counsel must show: (1) that counsel's representation "fell below an objective standard of reasonableness;" and (2) that counsel's deficient performance prejudiced the defendant. *Id.* at 687-88, 694. The *Strickland* standard requires a showing that a defendant's counsel's performance fell below the standard of customary skill and diligence displayed by a reasonably competent attorney and a showing that there is a reasonable probability that the outcome would have been different but for the substandard actions of counsel. *McGurk v. Stenberg,* 163 F.3d 470, 474-75 (8th Cir. 1998). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Complete denial of counsel, however, is a circumstance that is so likely to prejudice an accused that no showing of prejudice is necessary. *United States v. Cronic,* 466 U.S. 648, 658-59 (1984). If the accused is denied counsel at a critical stage of his trial, "there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Id.* at 659; *Strickland,* 466 U.S. at 692. In such cases, "error is structural, and thus requires automatic reversal." *Id.; see also United States v. Gonzalez-Lopez*, — U.S. at —, 126 S. Ct. at 2564 (2006) (involving denial of counsel of choice).

"Due process demands an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Gray v. Netherland,* 518 U.S. at 182 (Ginsburg, J., dissenting) (*quoting Armstrong v. Manzo,* 380 U.S. 545, 552 (1965)); *Morgan v. United States,* 304 U.S.

35

1, 18 (1938) ("The right to a hearing embraces not only the right to present evidence but also a reasonable opportunity to know the claims of the opposing party and to meet them."). An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 315 (1950). In this context, "notice" must be reasonably calculated in the circumstances to give interested parties an opportunity to be heard therein. *Crum v. Vincent,* 493 F.3d 988, 993 (8th Cir. 2007). "[E]rrors that undermine confidence in the fundamental fairness of the state adjudication certainly justify the issuance of the federal writ." *Williams v. Taylor,* 529 U.S. at 375 (citations omitted).

## 2.    Analysis

Silva presented the issue of denial of counsel on appeal to Nebraska courts and prevailed on that claim.  It is that finding by the state postconviction court that is entitled to deference from this court on habeas corpus review.  In the postconviction action, the court held that the Nebraska Appeals Court's finding that Silva's original sentence was excessively lenient and its imposition of a longer sentence was constitutionally deficient. The finding was in favor of Silva, with the State's acquiescence on both the nature of the constitutional injury and the remedy for the violation.  The decision was not appealed.  The State is now bound by its failure to appeal the postconviction court's finding.

Silva has already succeeded on his constitutional claim.  He has been denied the benefit of that victory.  The State, having been granted the remedy it sought—a new appeal

at which Silva could be represented by counsel—did not pursue the opportunity to challenge Silva's sentence for a second time on appeal, nor did it appeal the findings of the postconviction court.   Silva later filed an action in Johnson County to enforce the decision and was again successful.   As a result of the Johnson County action, correctional officials adjusted his sentence to conform to the postconviction order, a decision that by that time had become final and unappealable.   Silva has now been denied the benefit of that victory, this time because the State, again without notice to Silva, petitioned the Nebraska Supreme Court for a writ of mandamus.   The State used the mechanism of mandamus to resurrect a sentence that its own courts had found unconstitutional.

The only argument that the State presents to counter the merits of Silva's claim is essentially the same argument it presented to the Nebraska Supreme Court in its mandamus action:   that the Adams County District Court's order granting postconviction relief to Silva is void.   The court finds no authority for the State's remarkable contention that the postconviction court lacked jurisdiction over Silva's action.   Nebraska statutes and caselaw clearly support the postconviction court's jurisdiction.   There is no tenable argument to the contrary.   The State recites only the inapplicable legal maxim that a lower court cannot reverse a higher court and incorrectly applies the "law of the case" doctrine to support its novel strategy of effectively reversing a state court's legitimate constitutional finding through a writ of mandamus, without notice to the criminal defendant who is affected by the writ.

Other than the incorrect analysis referenced above, the State has not propounded any convincing argument or authority that its course of action is either authorized or appropriate.   If it were, the Nebraska Postconviction Act would be meaningless and there

37

would be no recourse for the vindication of constitutional rights in Nebraska state courts. Although the court's analysis of this issue involves some interpretation of state law, the court finds that the application (or misapplication) of those state laws and procedures has resulted in a constitutional injury to Silva. The facts of this case surely present an issue of federal constitutional law.

The State has attempted to turn what is essentially a single, uncomplicated issue into a morass of confusion in an apparent attempt to obfuscate its own legal ineptitude. Regardless, this case involves the most basic constitutional inquiry in a criminal case–whether Silva received due process of law. The due process inquiry is essentially one of basic fairness. This court concludes that Silva has been denied this basic right. This court finds that Silva was denied counsel on appeal. Under Nebraska law, the Appeals Court's sentence is void or voidable. As a matter of federal constitutional law, the Appeals Court's increased sentence cannot withstand constitutional scrutiny. The Nebraska Supreme Court's summary mandamus order cannot legitimately alter that essential finding. Silva has been denied rights guaranteed by the Fifth and Sixth Amendments to the Constitution and the sentence imposed in violation of that right cannot stand.

In sum, the postconviction court acted within its jurisdiction in entering its order and to argue otherwise is either disingenuous or obtuse. It is the function of a state postconviction court to rule on the constitutionality of state court criminal proceedings. It is what they do. Clearly established Nebraska law supports only this conclusion.

The State did not pursue its chance for a second challenge to Silva's sentence. After the inception of Silva's action in this court, the State took actions to upset the status quo in an ill-conceived attempt to undo its own malfeasance. Silva's sentence, originally disputed

on the basis of improper application of credit for time served, was increased by eighteen years, without any notice to Silva and without affording Silva an opportunity to be heard in the proceeding that yielded the increased time. The State's conduct compounded the original constitutional injury to Silva and confused the record. Its actions may amount to an independent due process violation.[21]

The State now has the temerity to assert that this court cannot address the propriety of its conduct (which occurred during the pendency of this action and while its attorneys general were officers of this court) because the issue has not yet been presented to Nebraska courts as a constitutional claim. If Silva were to pursue the issue in Nebraska courts, his action would likely be dismissed as successive or as out of time. The newly-asserted contention that Silva's postconviction action remains pending is contrived. The State has argued to this court and to the Nebraska Court of Appeals that the Adams County District Court lacked jurisdiction to vacate an Appeals Court order. It is unlikely that the State would now accede to the jurisdiction of a state district court over the mandamus order of the Nebraska Supreme Court.

This action is precisely the type of situation that the remedy of habeas corpus addresses. In spite of the State's unnecessary overcomplication of this issues, one thing is perfectly clear—-Silva is presently confined in violation of the Constitution. The State has cited no authority for the proposition that the remedy of a writ of mandamus can properly be used to reimpose a sentence that has been found, on postconviction review, to have violated the Constitution. Accordingly,

---

[21]The court need not address the issue as a separate inquiry since the result of the proceeding would be the same in any event.

IT IS ORDERED that Silva's petition for a writ of habeas corpus is granted.   A judgment in conformity with this opinion will issue this date.

DATED this 24th day of January, 2008.

BY THE COURT:


s/ Joseph F. Bataillon
Chief District Judge

40